IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DIONISIO PÉREZ; MELITZA PAGÁN OYOLA and the conjugal partnership among them,

Plaintiffs

v.

PLAN. ADALINE TORRES SANTIAGO, in her official capacity as President and General Manager of the Metropolitan Bus Authority and in her personal capacity; FERNANDO FRESES, in his official capacity as Executive Vice-President of the Metropolitan Bus Authority; ENG. WILSON AVILÉS, in his capacity as Vice-President of the Operations Area at the Metropolitan Bus Authority and in his personal capacity; METROPOLITAN BUS AUTHORITY,

Defendants

CIVIL 04-1219 (PG)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff commenced this civil action pursuant to 42 U.S.C. § 1983 on March 18, 2004, alleging a violation of his rights as secured by the First Amendment of the United States Constitution. (Docket No. 1.) Plaintiff also invokes this court's supplemental jurisdiction under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 and 5142, and Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 et seq., for alleged violations of his rights

CIVIL 04-1219 (PG)                                    2

guaranteed by the Constitution and laws of the Commonwealth of Puerto Rico. Defendants answered the complaint and filed motions for summary judgment which were supported with statements of uncontroverted facts in compliance with Rule 56(b), Local Rules of the United States District Court for the District of Puerto Rico (2004). (Docket Nos. 31, 37.)

Defendants Metropolitan Bus Authority, Adaline Torres-Santiago and Fernando Freses[1], in their official capacity, filed a motion for summary judgment on February 24, 2005. (Docket No. 31.) Defendants Adaline Torres-Santiago and Fernando Freses, in both their individual and official capacities, filed a motion for summary judgment on March 9, 2005. (Docket No. 37.) In response, on July 11, 2005, plaintiff filed a motion, corresponding memorandum, and statement of material facts in opposition and to the defendants' March 9, 2005 motion for summary judgment. (Docket Nos. 55, 56, 57.) In so doing, plaintiff failed to respond to defendants' February 24, 2005 motion for summary judgment. As a consequence, the court must take defendants' February 24, 2005 statement of uncontested facts as true. The fact that the motion for summary judgment of February 24, 2005 remains unopposed for our purposes "is not conclusive" and "does not in itself justify summary judgment." López v. Corp. Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991). "[T]he district court [is] still obliged to

---

[1] The court and parties will note that this defendant's name is spelled Freses, Fresses, and Fresse in different pleadings, including the defendant's pleadings. (E.g. Fresse, No. 14; Fresses, Docket No. 31; Freses, Docket No. 36.) While I believe the name to be Fresse, the name will appear as related in the respective pleadings.

CIVIL 04-1219 (PG)                              3

consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 452 (1st Cir. 1992) (quoting Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991)); see also Empress Hotel Inc. v. Puerto Rico, 218 F. Supp. 2d 189, 197 (D.P.R. 2001).  Before granting summary judgment the court must make sure that the moving party has met its burden demonstrating that there are undisputed facts entitling that party to judgment as a matter of law. Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).  Nonetheless, the statement of uncontested facts of February 24, 2005 (Docket No. 32) is taken as true.

In the complaint plaintiff alleges the following:  plaintiff Dionisio Pérez ("Pérez") is a well known New Progressive Party ("N.P.P.") affiliate, who belonged to former Governor Pedro Roselló's advanced guard, has served as an electoral functionary, and as a presidential delegate in the N.P.P. reorganization. Pérez has participated and continues to participate in N.P.P. partisan political activities.  Prior to commencement of this lawsuit, Pérez held the career position of Assistant to the Operations Area Director , and was in charge of supervising the general mechanics, light mechanics and the maintenance shops within the Metropolitan Bus Authority ("MBA").

The MBA is a public corporation of the Commonwealth of Puerto Rico.  Adaline Torres Santiago ("Torres") is the president and general manager of the MBA.  In that capacity Torres acts as the nominating authority.  Fernando Fresses ("Fresses") is

CIVIL 04-1219 (PG)                                    4

the executive vice-president. Engineer Wilson Avilés ("Avilés"), no longer a defendant[2], is the vice-president of operations.

Along with the MBA, Torres, Avilés and Fresses are co-defendants in this lawsuit. The personal defendants are known members of the Popular Democratic Party ("P.D.P.") and are being sued in both their individual and official capacities.

Specifically, it is alleged that because of plaintiff's political association, the co-defendants conspired to remove him from his position as Assistant to the Operations Area Director in order to have him work as an exit booth operator. At the same time, plaintiff alleges that the co-defendants effectively created a trust position known as "Workshop Director", a position that had never existed at the MBA. In so doing, plaintiff avers that well known P.D.P. affiliate José M. Agosto Varcárcel ("Agosto") was appointed to the newly created position on October 6, 2003. Agosto had previously held the trust position as operations vice-president at the MBA and was removed from that position by Adaline Torres Santiago, a move that was considered a demotion. Plaintiff calls Agosto's new position a consolation prize given to him as a member of the P.D.P.

Plaintiff's chief argument relating to Agosto's appointment is that the duties of the newly created position of Workshop Director, occupied by Agosto,[3] are the same duties formerly held by plaintiff as Assistant to the Operations Area Director.

---

[2](See Docket No. 18, Partial Judgment, August 6, 2004.)

[3]There were three positions of Workshop Director occupied by Agosto, Juan A. Ventureira Orozco, and José A. Flores Franqui as of October 6, 2003.

CIVIL 04-1219 (PG)                                  5

The Workshop Director position was devoid of specific duties. Using Pérez as a scapegoat, the defendants arguably removed plaintiff from his duties of supervising the workshops and assigned those duties to Agosto's position. Once removed, plaintiff was transferred by engineer Avilés, who was operations vice-president, from the workshops where Pérez worked to the exit booth without any job description or any meaningful duties assigned. Moreover, plaintiff contends that he was assigned a salary of $2,459 a month for performing his duties, and Agosto receives a monthly salary of $3,403 for performing the exact duties previously performed by plaintiff.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-

CIVIL 04-1219 (PG)                              6

Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

## LOCAL RULE 56

In the District Court of Puerto Rico, Local Rule 56(b), previously Local Rule 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute. These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material fact establishing that there is a genuine issue in dispute. Local Rules of the United States District Court for the District of Puerto

CIVIL 04-1219 (PG)                              7

Rico, Local Rule 56(e) (2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

These facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983); Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000). Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d at 932.

The defendants' consolidated statement of material facts supporting the motions for summary judgment is as follows:[4]

> 1. In the year 2003 there were problems with buses of the Metropolitan Bus Authority that were coming to the garage from the street with malfunctions. (Ex. 1, at 14-15.)

---

[4] Facts 1 through 5 from defendants' February 24, 2005 motion (Docket No. 32) will be taken as true. See, supra, note 2. Additionally, facts 1-18 from defendants' statement of uncontroverted material facts (Docket No. 36) will be listed and referred to in this report as 6-23, although there is some overlapping and repetition in some of the statements.

CIVIL 04-1219 (PG)                              8

2. Engineer Avilés asked Juan A. Ventureira Orozco, who he believed was the best person to occupy the position of Fleet Inspector, that could do a perfect job there in order to correct the units coming from the streets with malfunctions and he (Ventureira) thought his colleague Dionisio Pérez was the person to trust and the one who possessed the qualities to occupy said position. (Ex. 1, at 14-15.)

3. Dionisio Pérez was assigned on October 6, 2003 to occupy the position of Fleet Inspector because he was recommended for said position by Ventureira. (Ex. 1, at 14-15.)

4. Ventureira is a well known NPP affiliate and in October 2003 was assigned to the position of Workshop Director. (Ex. 2, at 18-19; Ex. 4, at 24-25.)

5. Dionisio Pérez is currently the director of the tire department of the MBA and was recommended to said position by Ventureira (Ex. 3 at 22-23.)

6. Dionisio Pérez' position at the Metropolitan Bus Authority ("MBA") is assistant of the director. (Ex. 1, at 22; Ex. 2.)

7. The MBA's Personnel Regulations Manual of May 13, 1996, was approved during the administration of the NPP, from 1993-2000 by Dr. Carlos I. Pesquera, former Secretary of the Department of Transportation & Public Works. Héctor R. Rivera was president of the MBA at that time. (Ex. 3.)

8. Pursuant to the MBA's Personnel Regulations Manual of May 13, 1996, at Article 7, Section 7.2, page 21, if a substantial and permanent change in responsibilities occurs the classification of responsibilities of the employees are altered to the level in which new classification concepts are incorporated to their original classification. (Id.)

9. Pursuant to the MBA's Personnel Regulations Manual, at Article 7, Section 7.3(b), page 21, regardless of the criteria taken into consideration in the re-classification, the effect will be that the position assigned to another classification of retribution will be the same as the former classification that the employee sought at the MBA. (Id.)

10. Dionisio Pérez is affiliated to the N.P.P. (Ex. 1, at 23.)

11. In the year 2003, there were problems with the units of the MBA that were coming into the garage from the street. (Ex. 4, at14-15; Ex. 5, at 14-15.)

12. Due to the malfunctions, the MBA developed a position in order to diminish the problem, which was called the "Fleet Inspector", a position assigned to Dionisio Pérez. (Ex. 4, at 14-15; Ex 5, at 14-15; Ex. 6, at 42-43.)

CIVIL 04-1219 (PG)                           9

13. Based on the necessity of protecting the buses, a pilot plan was assigned by the MBA officials. (Ex. 3; Ex. 4, at 14-15; Ex 5, at 14-15; Ex. 6, at 42-43.)

14. Engineer Avilés, vice-president of the Operations Area at the MBA, asked Ventureira who he believed was the best person to occupy the position of Fleet Inspector, and could fix the units coming in off the street and he "thought" of his colleague, Dionisio Pérez. (Ex. 4, at 14-15; Ex 5, at 21-22.)

15. Dionisio Pérez was the person to trust and the one having qualifications to occupy said position. (Ex. 4, 5.)

16. Dionisio Pérez was assigned on October 6, 2003 to occupy the position of Fleet Inspector because he was recommended for said position by Ventureira. (Ex. 4, at 14-15; Ex. 5, at 16-19.)

17. Ventureira is a well known N.P.P. affiliate and in October 2003 was assigned to the position of Workshop Director, which is a trust position within the MBA. (Ex. 4, at 18-19, 24-25; Ex. 6, at 42-43.)

18. Revolution RH-03-05 titled: "For the Amendment of the Classification Plan of Trust Service and to Create Three Garage Director Positions at the MBA," was based on the MBA's Personnel Regulations Manual. It created the three positions due to the necessities of the agency. (Ex. 7, at 1.)

19. On February 26, 2002, Juan M. Agosto Valcárcel, Operations vice-president, recommended a salary raise of $115, to Dionisio Pérez, effective on March 1, 2002. This was later approved by Luis R. Díaz Cuevas, vice-president of Human Resources. (Ex. 8, at 21.)

20. On March 12, 2002, Dionisio Pérez received a recognition, by letter, from defendant Torres congratulating him for his good work. (Ex. 9.)

21. At the time of the assignment of Dionisio Pérez as Fleet Inspector he received the same salary until the March 1, 2002 pay raise. (Ex. 8, at 20.)

22. Since March 24, 2004, Dionisio Pérez was the director of the Tire Department of the MBA and was recommended to said position by Ventureira. (Ex. 4, at 22-23, 26.)

23. The official documents of the MBA are a certified copy of the personnel file of plaintiff Dionisio Pérez. (Ex. 10.)

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants argue in their motions for summary judgment that plaintiff has raised unsupported allegations of political discrimination that fail to comply with

CIVIL 04-1219 (PG)                              10

the pleading requirements of 42 U.S.C. § 1983. Alternatively, defendants allege that they are entitled to defenses of respondeat superior,[5] qualified immunity in their individual capacities', and protection as an entity under the Eleventh Amendment.[6]

> To prevail in a § 1983 claim, plaintiff [] "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir.1996) (citations omitted). As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable. Cf. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 91-92 (1st Cir.1994) (finding that there is no § 1983 liability on the basis of respondeat superior, and thus, "[a] supervisor may be found liable only on the basis of his own acts or omissions"); Wilson v. City of N. Little Rock, 801 F.2d 316, 322 (8th Cir.1986) (finding, in a § 1983 action against

---

[5]Respondeat superior when brought as a defense in the context of government municipality responsibility is applicable "when execution of a government's policy or custom" inflicts the injury that the "government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 713 (1978). Here, the defense is inapplicable to co-defendants Torres, Avilés and Fresses as to their individual and official capacity, under the entity theory. However, there is strong support for the argument that defendant MBA is a government entity under the standard. Moreover, plaintiff failed to respond to the motion for summary judgment in which the defense was raised. Therefore, even if plaintiff established a meritorious claim, it is likely I would recommend that the MBA be dismissed from this lawsuit, under the theory of governmental respondeat superior.

[6]The Eleventh Amendment protects state governments from suit in federal court without consent. U.S. Const. amend. XI. Here, the MBA is a municipal corporation. The amendment does not extent to municipal corporations. See Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1036 (1st Cir. 1987); Mt. Healthy City Sch. Dist. Bd. of Educ, v. Doyle, 429 U.S. 274, 287 (1977). Therefore, the defendant has no basis for a defense under the Eleventh Amendment.

CIVIL 04-1219 (PG)                              11

>police officers, that "[l]iability may be found only if there
>is personal involvement of the officer being sued").[7]

Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005).

It is evident that the co-defendants have acted under color of state law for purposes of satisfying the first element of section 1983, when, as officials of a public corporation, they created the position of "Workshop Director" occupied by Agosto (and two others) and transferred plaintiff to another position within the MBA.

Therefore, the next hurdle for plaintiff to bridge relates to the second requirement of a properly alleged section 1983 cause of action, that is, whether defendants deprived plaintiff of a right guaranteed by the Constitution or laws of the United States. Typically, as here, in cases involving section 1983 actions said alleged deprivations of rights revolve around whether a plaintiff was denied due process of law under the Fourteenth Amendment [8] or whether plaintiff was discriminated against for political association in violation of the First Amendment.

### FIRST AMENDMENT CLAIM

Plaintiff asserts a First Amendment claim. He claims that he was sacrificed due to his political affiliation to the N.P.P. and deprived of the duties he was

---

[7] In addition to these elements the courts also often cite causation as an element of a properly alleged section 1983 actions. However, an analysis of causation is unnecessary given my ultimate recommendation.

[8] In their motions for summary judgment defendants present analysis defending constitutional claims of equal protection and due process. However, plaintiff only alleges claims arising under the First Amendment. Therefore, I will only address such claim.

CIVIL 04-1219 (PG)                              12

performing so that those duties could be assigned to a well known P.D.P. affiliate in a newly created trust position of Workshop Director at the MBA. He alleges that the only reason this action was taken was because of his political affiliation.

> To make a prima facie case of political discrimination a "plaintiff must show that [s/he] engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). This requires more than merely "juxtaposing a protected characteristic--someone else's politics--with the fact that plaintiff was treated unfairly." Id. (quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir.1990)). Indeed, evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not sufficient to meet this burden. Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir.1998). Instead, to prevail, a plaintiff must point to evidence in the record that would "permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir.1994).

Alburquerque v. Faz Alzamora, 357 F. Supp. 2d 385, 391 (D.P.R. 2004).

> "The First Amendment protects associational rights. Incorporated with this prophylaxis is the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F.3d 26, 28-29 (1st Cir.2004) (citing LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir.1996)). Generally, a government employer cannot discharge public employees on the basis of their political affiliation. Id. (citing Elrod v. Burns, 427 U.S. 347, 350, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). An exception to this rule is when "political affiliation is an 'appropriate requirement for the effective performance of the public office involved.'" Id. ([quoting] Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980)). "[T]he Supreme Court has decreed that a public employer, as a prerequisite for discharging an employee for political

CIVIL 04-1219 (PG)                              13

>  reasons, must demonstrate that political affiliation is an appropriate requirement for the position in question. This means, in effect, that the employer must show that the position is confidential or policymaking in nature." Id. (citing Elrod, 427 U.S. at 362-63, 367, 96 S.Ct. 2673)).

Alburquerque v. Faz Alzamora, 357 F. Supp. 2d at 391-92.

With respect to plaintiff's former position as Assistant to the Operations Area Director, it can be gleaned from the record that the greater part of his duties was to ensure that the buses operated by the MBA were in proper working condition. Based on this, one would be hard pressed to come up with an argument in favor of the view that said position required policy-making. In essence, Pérez' job was to make sure the buses were running. Nowhere in the record does it state that Dionisio Pérez was involved in any decision-making process as to the overall direction of the MBA or even the operations department. Therefore, it is not even arguable that Pérez held anything but a non-policy making position. Thus, the next question to address is whether plaintiff was dismissed because of his political association.

> The First Amendment protects government employees in non-policymaking positions from discrimination based on their political affiliation. LaRou v. Ridlon, 98 F.3d 689, 661 (1st Cir. 1996); see also Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23, 30 (1st Cir. 2004). Nonpolicymaking government employees who allege political discrimination have a threshold burden to produce evidence sufficient to allow a rational fact-finder to find that their political affiliation was a substantial or motivating factor behind the adverse employment action taken against them. Báez-Cruz v. Municipality of Comerío, 140 F.3d 24, 28 (1st Cir. 1998); Rodríguez-Ríos, 138 F.3d at 24. Once a plaintiff has met this threshold [in establishing a prima facie case], the burden shifts to the employer to articulate a

CIVIL 04-1219 (PG)                                            14

>   nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken [the same action] without regard to the plaintiff's political affiliation. LaRou v. Ridlon, 98 F.3d at 661; Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 . . . (1977).

Alburquerque v. Faz Alzamora, 357 F. Supp. 2d at 395; see Santiago-Rodriguez v. Rey, 404 F. Supp. 2d 400, 404 (D.P.R. 2005).

>   In political discrimination claims involving changed work conditions, this court has held that plaintiffs must establish by clear and convincing evidence that their work situation is "unreasonably inferior" to the norm, and then persuade, by a preponderance of the evidence, that political affiliation motivated the adverse employment action. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217-20 (1st Cir.1989) (en banc). The burden then shifts to the employer, under the "Mt. Healthy defense," to establish by a preponderance of the evidence that it would have taken the contested action regardless of the employee's political affiliation. Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568.

González-Piña v. Rodríguez, 407 F.3d 425, 431-32 (1st Cir. 2005).

   Plaintiff contends that his support for and association with the N.P.P. serve as the basis of his engagement in constitutionally protected conduct. (See Docket No. 1, Complaint, at 3, ¶¶ 1-3, at 5, ¶ 9.) While his participation and support for the N.P.P. is not contested, plaintiff has done little by way of evidence to show that his party involvement was the substantial or motivating factor in defendants' decision to remove plaintiff from his position as Assistant to the Area Director. In his motion in opposition to summary judgment plaintiff merely alleges that defendants knew of his party affiliation. (Id. ¶¶ 2, 3.) Nowhere in the record does plaintiff establish,

CIVIL 04-1219 (PG)                                              15

through documentary or other evidence, a link between his admittedly significant party involvement and co-defendants' actions in removing him from his former position. Plaintiff stresses that Ventureira testified in his deposition that plaintiff's political affiliation is well-known to the defendants, and that they knew that plaintiff was one of the major activists of the other administration. However, Ventureira's statements are at best conclusory, and replete with innuendo rather than with facts leading to inferences. For example, Ventureira testified at his deposition that Agosto, a P.P.D. affiliate, had said that "he has these great friends who are members of the House of Representatives." (See Docket No. 35-5, at 6:16-17.) This type of statement which invites speculation and which places labels on players, is precisely the type of evidence which is insufficient to prove discriminatory animus. See González Piña v. Rodríguez, 407 F. 3d at 432; Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). For plaintiff to be labeled a member of the P.N.P. and for the new administration to be from the opposing party is insufficient to prove discriminatory animus, as is the conclusory statement based on whimsy or at very least inadmissible evidence that Dionisio Pérez was removed to accommodate Agosto.

> [A]ssertions about statements of political affiliation--unaccompanied by any specific factual information to support the claim--are patently insufficient to establish an act of political discrimination. See, e.g., Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 8 (1st Cir. 2000) (affirming summary judgment for defendants where the only evidence offered by plaintiffs was a sworn statement that a defendant "voiced his intention" to rid the workplace of employees with plaintiffs' political affiliation); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16

CIVIL 04-1219 (PG)                              16

>       (1st Cir.1989) (stating, "we have consistently required plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination") (emphasis added); and López-Carrasquillo v. Rubianes, 230 F.3d 409 (1st Cir. 2000).

Ramos-Bonilla v. Vivoni, 259 F. Supp. 2d 135, 144 (D.P.R. 2003).

The conclusory unsupported statement/opinion that plaintiff was the victim of political discrimination is insufficient to prove discriminatory animus in the actions of the defendants. There is not even circumstantial evidence with which plaintiff can prove a prima facie case of political discrimination.

Alternatively, assuming plaintiff has met his burden of establishing a prima facie case, co-defendants have satisfied their burden shifting threshold by a preponderance of the evidence by articulating a nondiscriminatory basis for the allegedly adverse employment decision. In particular, defendants cite as reason for the removal of plaintiff from his former position the fact that members of his own political party, N.P.P., recommended him for positions as "Fleet Inspector" and "Tire Inspector" because he is "trustworthy" and "qualified." (See Docket No. 36, Defendant's Statement of Uncontroverted Facts, at ¶¶ 1-3, 5, 14-17.) In conjunction with this, though it was a general increase, plaintiff did receive a raise of $115 a month. Consequently, whether one partakes in either a thorough or cursory examination of the record, it is evident from the uncontested facts that plaintiff was moved to another position for which he was better suited and that the move benefitted the overall functioning of the MBA.

CIVIL 04-1219 (PG)                            17

Moreover, in failing to establish a prima facie case for political discrimination under the case law standard set out under the First Amendment, plaintiff, by relying primarily on his party affiliation argument, has also failed to overcome the burden-shifting framework of the summary judgment standard. Aside from the varied, bare conclusory statements that plaintiff, an N.P.P. stalwart, was removed to accommodate Agosto, a P.P.D. stalwart, plaintiff has failed to present sufficient competent evidence to establish a prima facie case of political discrimination. I will therefore recommend that the federal cause of action of the complaint based upon a violation of plaintiff's First Amendment rights be dismissed as to all defendants.

## QUALIFIED IMMUNITY

"Qualified immunity shields government officials [who are] performing discretionary functions from civil damages "insofar as their conduct does not violate a clearly established statutory or constitutional right of which[ he or she] should have reasonably known." Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 92 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  On a motion for summary judgment, the relevant inquiry is two pronged. First, the "plaintiff must establish that a particular defendant violated the plaintiff's federally protected rights." Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d at 91. Second, the court must ask "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information [he] possessed at the time of his allegedly unlawful conduct." Id. (quoting McBride v. Taylor, 924 F.2d 386, 389

CIVIL 04-1219 (PG) 18

(1st Cir. 1991)); see Anderson v. Creighton, 483 U.S. 635, 639 (1987); Horta v. Sullivan, 4 F.3d 2, 13 (1st Cir. 1993). In alleging qualified immunity the first hurdle for a plaintiff to overcome is the violation of a constitutional right. See St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995). Plaintiff must demonstrate that the defendants knew or should have known that their actions would violate plaintiffs' constitutional rights. Crawford-El v. Britton, 523 U.S. 574, 587 (1998). Because there is lack of material evidence to establish even a prima facie case and also because the cause of action will not survive a Mt. Healthy defense under a summary judgment standard, I do not address defendants' alternative argument for qualified immunity.

## SUPPLEMENTAL CLAIMS

It is well-settled law that "[u]nder 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if the district court has dismissed all claims under which it has original jurisdiction." González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) (quoting 28 U.S.C. § 1367(c); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004), cert. denied, 543 U.S. 1120 (2005). "Certainly, if the federal claims are dismissed before trial, . . . , the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs., 383 U.S. 715, 726 (1966) (footnote omitted). "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience,

CIVIL 04-1219 (PG)                         19

fairness, and comity --will point toward declining to exercise jurisdiction over the remaining state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Here, this is such the case since the remaining state claims and their corresponding analysis are substantially similar to the federal claims.  Therefore, as a matter of judicial economy and fairness to defendants, having found that all federal claims should be dismissed, I recommend that the court not retain jurisdiction over plaintiff's supplemental state-law causes of action.

In view of the above, I recommend that the motions for summary judgment be granted and that the complaint be dismissed in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v.

CIVIL 04-1219 (PG)                                              20

Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

      At San Juan, Puerto Rico this 7th day of April, 2006.

                                            S/ JUSTO ARENAS
                            Chief United States Magistrate Judge